IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00899-PAB

In re: KIMBERLY MICHELLE MAYHEW

     Debtor

---

CONSOLIDATED HARDWOODS, INC.

     Plaintiff-Appellant,

v.

KIMBERLY MICHELLE MAYHEW,

     Defendant-Appellee.

---

## ORDER

---

This matter is before the Court on the appeal of the Findings of Fact and Conclusions of Law of the Bankruptcy Court filed by plaintiff-appellant Consolidated Hardwoods, Inc. ("Consolidated").  The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## I.  BACKGROUND[1]

In 1999, Dr. Kimberly Mayhew and her then-husband Doug Mayhew purchased vacant land in Boulder County, Colorado with the intention of building a home (the "home").  R. at 611.  The home was to be constructed by Mr. Mayhew's construction company, Mayhew Industries, Inc. ("MII").  *Id.*  Dr. Mayhew functioned as MII's

---

[1]The following facts are taken from unchallenged portions of the Bankruptcy Court's findings of fact and relevant portions of the record.

secretary and bookkeeper, but continued to work full time as a physician at all times relevant.  *Id.*  In 2001, the Mayhews obtained a construction loan for $999,999 (the "construction loan").  R. at 612.  In September 2005, the Mayhews obtained a mortgage loan to pay off the outstanding balance of the construction loan.  *Id.*  In October 2005, Dr. Mayhew obtained a home equity line of credit, which was secured by a second mortgage.  *Id.*  These proceeds were used, in part, to pay MII's expenses.  *Id.*  The Mayhews also used personal credit cards to pay MII's expenses.  *Id.*

Consolidated manufactures interior wood trim and other wood products.  R. at 613.  In 2003, MII opened an account with Consolidated.  *Id.*  In December 2004, MII ordered $12,436.81 of wood trim from Consolidated to be used in the home.  *Id.*  MII paid $6,669.97 and disputed the remaining charges.  *Id.*  Dr. Mayhew testified that Mr. Mayhew told her that the materials Consolidated supplied were defective or did not meet specifications.  R. at 123-124.  Mr. Mayhew further instructed Dr. Mayhew not to pay Consolidated until the dispute was resolved.  Mr. Mayhew and MII employee Tony Mitchell raised concerns regarding defects and specification issues with Consolidated's owner Russ Stewart.  Docket No. 22-1 at 46, 65.  Dr. Mayhew testified that, if Mr. Mayhew had instructed her to make full payments on the wood trim ordered for the home, she would have done so.  R. at 127.  In February 2005, MII ordered $4,199.80 worth of trim from Consolidated, which, in May 2005, MII paid for in full.  R. at 613.  In May 2005, MII paid Consolidated an additional $2000 in past due balances.  *Id.*  In July 2005, MII's account with Consolidated had a balance of $9,928.70.  *Id.*

In March 2006, Dr. Mayhew sent Consolidated a settlement offer, which

2

Consolidated rejected.  *Id.*  Consolidated subsequently filed suit in County Court for the

City and County of Broomfield, Colorado (the "state court case") against MII and against

the Mayhews individually to recover the amount due on the open account.  *Id.*; Docket

No. 13 at 10-11.  MII and the Mayhews asserted counterclaims against Consolidated for

breach of contract, fraudulent misrepresentation, and violation of the Colorado

Consumer Protection Act.  Docket No. 26-2 at 49-52.  The case was then transferred to

District Court for the City and County of Broomfield.  Docket No. 13 at 10-11.  In March

2007, after a two-day trial, the jury awarded Consolidated $9,210, minus a setoff of

$703 based upon MII's and the Mayhews' counterclaims.  R. at 613.  The state court

awarded Consolidated approximately $29,000 in attorney's fees and costs.  *Id.*

 In January 2008, Dr. Mayhew filed a Chapter 7 bankruptcy petition.  *Id.*  On

March 27, 2008, Consolidated filed the adversary proceeding that is the subject of this

appeal, objecting to the discharge of Dr. Mayhew's debt to Consolidated.  R. at 1.  On

June 29, 2012, Consolidated filed an amended complaint, asserting a claim for relief

under 11 U.S.C. § 523(a)(2), (4), and (6), and state law claims for relief for civil theft,

civil conspiracy, breach of fiduciary duty, and breach of contract.  R. at 17-23.

 On September 16 and 17, 2013, the Bankruptcy Court held a trial in the

adversary proceeding.  R. at 58.  The parties submitted written closing arguments.  In

its closing argument, Consolidated chiefly argued that Dr. Mayhew's debts to it were

non-dischargeable under 11 U.S.C. § 523(a)(4) because Dr. Mayhew committed

"defalcation while acting in a fiduciary capacity" to Consolidated.  R. at 67.  On February

27, 2014, the Bankruptcy Court issued its decision, dismissing Consolidated's claims.

R. at 611.  Because Consolidated relied on the Colorado Mechanics' Lien Trust Fund

3

Statute, Colo. Rev. Stat. § 38-22-127, to create the requisite trust sufficient to establish a fiduciary duty under 11 U.S.C. § 523(a)(4), the Bankruptcy Court concluded that Consolidated had established a trust res within the scope of Colo. Rev. Stat. § 38-22-127 in the amount of the construction loan.  R. at 615-16.  The Bankruptcy Court also concluded that Dr. Mayhew had sufficient control over the construction loan proceeds to support the imposition of personal financial liability under Colo. Rev. Stat. § 38-22-127.  R. at 618.  However, the Bankruptcy Court found that Dr. Mayhew was protected by the safe harbor provision, § 38-22-127(2), because she had a good faith belief that Consolidated's claim was invalid.  R. at 619.  Although the Bankruptcy Court found that the safe harbor provision was, by itself, sufficient to preclude Consolidated's 11 U.S.C. § 523(a)(4) claim, the Bankruptcy Court concluded that, in the alternative, Dr. Mayhew lacked the requisite mental state to have committed a defalcation.  R. at 620-21.  As a result, the Bankruptcy Court ordered Consolidated's claims against Dr. Mayhew dismissed.  R. at 622.

On March 27, 2014, Consolidated filed this appeal.  Docket No. 1.  The parties have filed appendices to the record.  *See* Docket Nos. 13-1, 13-2, 13-3, 13-4, 22-1, 26-1, 26-2.  This appeal is fully briefed.

## II.  ANALYSIS

The Court reviews the Bankruptcy Court's legal determinations de novo.  *See In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010).  The Court also reviews de novo mixed questions of law and fact that primarily involve legal issues.  *See In re Wes Dor Inc.*, 996 F.2d 237 (10th Cir. 1993).  The Bankruptcy Court's factual findings are

reviewed for clear error.  *See In re Baldwin*, 593 F.3d at 1159.

### A.  Safe Harbor Defense

Consolidated's first argument is that the Bankruptcy Court erred in concluding that Dr. Mayhew was protected by the safe harbor provision of Colo. Rev. Stat. § 38-22-127(2).  Docket No. 13 at 12.[2]

The Bankruptcy Court concluded that a "good faith" belief under § 38-22-127(2) had both a subjective and objective component, a conclusion which Consolidated does not dispute.  As to the subjective component, the Bankruptcy Court found that Dr. Mayhew's testimony was credible regarding her understanding of the debt owed to Consolidated and the role she played in disputing such debt.  R. at 619.  The Bankruptcy Court found that Mr. Mayhew decided whether particular construction invoices would be paid, that Mr. Mayhew told Dr. Mayhew that there were problems with the wood Consolidated provided, and that, at all times relevant, MII had sufficient funds to pay the invoices.  *Id.*  As a result, the Bankruptcy Court found that Dr. Mayhew had a "subjectively honest, good faith belief that the balance of Consolidated's claim was not valid or that MII was entitled to a complete setoff."  *Id.*

On the issue of whether Dr. Mayhew's belief was objectively reasonable, the Bankruptcy Court considered two sources of information.  First, it considered Dr. Mayhew's testimony, which it found to be credible.  R. at 619.  Second, it reviewed the state court trial transcript, particularly the testimony of Mr. Mayhew and Mr. Mitchell.  The Bankruptcy Court noted that Mr. Mitchell was not employed by MII at the time of

---

[2]Consolidated abandoned its argument that it lacked sufficient notice that Dr. Mayhew intended to rely on the safe harbor defense.  Docket No. 25 at 4.

the trial and therefore had no reason to be "anything other than truthful." *Id.* The Bankruptcy Court stated that, although the jury did not fully accept MII's counterclaim, "the existence of a reasonable belief is not determined by ultimate success in litigation." *Id.* (citing *People v. Anderson*, 773 P.2d 542, 546 (Colo. 1989)). The Bankruptcy Court concluded that Dr. Mayhew's "belief that Consolidated's claim was not valid or that MII was entitled to a complete setoff was supported by other evidence and was objectively reasonable." *Id.* at 619-20.

Consolidated's arguments do not make clear whether it challenges the Bankruptcy Court's findings regarding Dr. Mayhew's subjective belief, objective belief, or both. To the extent Consolidated challenges the Bankruptcy Court's finding regarding Dr. Mayhew's subjective belief, Consolidated fails to identify any reversible error. Consolidated argues that the fact that the Mayhews did not raise issues related to the quality of the materials Consolidated provided and the fact that none of the invoices refer to any ongoing dispute regarding the quality of such materials calls into the question the objective reasonableness of Dr. Mayhew's belief. However, even assuming that the Court were to draw such an inference, it is not a sufficient basis upon which to conclude that the Bankruptcy Court's conclusion on this point was erroneous. The Bankruptcy Court stated that Dr. Mayhew relied on Mr. Mayhew to determine whether invoices should be paid. Consolidated does not identify any evidence to suggest that Dr. Mayhew did not subjectively believe in the truth of Mr. Mayhew's representations to her regarding the quality of Consolidated's products.

As to Dr. Mayhew's objective belief, Consolidated's primary argument is that the result of the state court case forecloses any conclusion that Dr. Mayhew had an

6

objectively reasonable belief that Consolidated's claim was invalid.  Docket No. 13 at

13-15.  However, Consolidated's position on this issue is inconsistent.  Consolidated

argues that, by virtue of its verdict, the jury must have determined that Mr. Mitchell's

testimony was not credible and, as a result, that the Bankruptcy Court should have

deferred to such findings.  Docket No. 13 at 14.  In the following paragraph,

Consolidated argues that, because § 38-22-127 and Dr. Mayhew's good faith belief

were not raised in the state court case, the state court case "should not be used to

determine an issue that was irrelevant there."  *Id.* at 14-15.  In any event,

Consolidated's arguments are without merit.  The Bankruptcy Court was the finder of

fact with respect to Consolidated's claims in the adversary proceeding.  The Bankruptcy

Court was not acting as an appellate court and was not, as Consolidated contends,

required to defer to the state court jury's factual findings.  *Id.* at 14 (citing *Diaz v. Sec'y

of Health & Human Servs.*, 898 F.2d 774 (10th Cir. 1990)).[3]  As a result, the Bankruptcy

Court was entitled to consider and weigh any evidence in the record of the adversary

proceeding, including evidence from the state court case.  The state court trial transcript

was admitted into evidence in the adversary proceeding as Defendant's Exhibit B.

Docket No. 21 at 19 n.4.  The Court does not understand Consolidated to argue that

the evidence the Bankruptcy Court considered from the state court case was

inadmissible or was otherwise improperly before the Bankruptcy Court.  To the extent

_____

[3]Even assuming that the Bankruptcy Court had been inclined to assign weight to
the state court jury's credibility determination, there is no basis upon which to conclude,
as Consolidated argues, that, by returning a verdict in Consolidated's favor, the jury
necessarily found Mr. Mitchell's testimony not credible – a point which Consolidated
later recognizes in its reply brief.  *See* Docket No. 25 at 5.

Consolidated's argument can be construed as asserting that the Bankruptcy Court improperly weighed Mr. Mitchell's state court testimony, Consolidated did not designate Mr. Mitchell's state court testimony as part of the record.  The portion of Mr. Mitchell's state court testimony that Dr. Mayhew provides does not suggest that the Bankruptcy Court's evaluation of such testimony was clearly erroneous.  *See, e.g.*, Docket No. 22-1 at 79-81 (discussing problems with trim provided by Consolidated).  It appears that the Bankruptcy Court, having focused on Dr. Mayhew's testimony to make its subjective assessment, looked to other evidence bearing on the issue of whether it was reasonable to form a good faith belief that the debt was not valid to make its objective assessment.  There was nothing improper about the Bankruptcy Court informing its decision on the objective component by reviewing evidence admitted in the state court trial.  Thus, Consolidated provides no basis upon which to conclude that the Bankruptcy Court erred in its consideration of evidence from the state court case.

Because § 38-22-127 does not appear to have been raised in the state court case, the jury verdict did not have preclusive effect with respect to the objective reasonableness of Dr. Mayhew's belief.[4]  *Park Lake Resources Ltd. Liability Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1235-36 (10th Cir. 2004) (discussing claim and issue preclusion).  Therefore, the Bankruptcy Court, as it appropriately recognized, was not required to consider the jury verdict in the state court case as having conclusively

---

[4]Although it is not entirely clear from the record what claims were decided by the jury in the state court case, the parties agree that the state court case "did not concern" § 38-22-127.  Docket No. 13 at 14; Docket No. 21 at 23.

decided the issue.  *See* R. at 619.[5]  Thus, the fact that the jury rejected a majority of

MII's and the Mayhews' counterclaim does not, by itself, render erroneous the

Bankruptcy Court's conclusion regarding the objective reasonableness of Dr. Mayhew's

belief.

Consolidated argues that the Bankruptcy Court's findings are undermined by the

state court's award of attorney's fees to Consolidated, wherein the state court found

that Consolidated prevailed on all significant issues and that MII and the Mayhews

"engaged in a deliberate litigation strategy calculated to increase the cost of litigation."

Docket No. 26-2 at 61-62.  However, as discussed above, the mere fact that the

Mayhews did not prevail in the state court action was not dispositive of whether Dr.

Mayhew was entitled to safe harbor protection in the adversary proceeding.  The

suggestion that the Mayhews did not engage in appropriate litigation tactics is not so

directly tied to the objective reasonableness of Dr. Mayhew's belief in the quality of the

product that Consolidated provided to Mr. Mayhew that it renders the Bankruptcy

Court's conclusion suspect.

It is not entirely clear what, if any, additional arguments Consolidated asserts

regarding the Bankruptcy Court's application of § 38-22-127.  The subject headings in

Consolidated's opening brief identify as an issue "[w]hether the trial court erred by not

---

[5]In *Anderson*, the Colorado Supreme Court noted that, although a criminal defendant charged with theft of construction project trust funds may be able to assert § 38-22-127(2) as a defense at trial, the fact that the homeowners were ultimately successful "in defending against claims that should have been previously paid by the contractor" did not bear on whether a criminal defendant knowingly misused the funds at issue.  773 P.2d at 546.  Although not directly analogous to the present case, *Anderson* supports the proposition for which the Bankruptcy Court cited it.

finding a retroactive imposition of a fiduciary duty per Colo. Rev. Stat. § 38-22-127, et

seq." Docket No. 13 at 5; *see also id.* at 15. These headings appear to be in reference

to the Bankruptcy Court's determination that, because Dr. Mayhew was entitled to safe

harbor protection under § 38-22-127(2), she was not subject to a retroactive imposition

of a fiduciary duty following the jury's verdict in the state court case. R. at 620. That

particular finding is not, however, what Consolidated challenges in the body of its

argument. Rather, in the applicable section of its brief, Consolidated notes that the

Bankruptcy Court concluded that Dr. Mayhew was in a fiduciary position pursuant to §

38-22-127 and argues:

> The trial court then went on to hold that the Defendant could not be held
> "retroactively" liable as a fiduciary as to any claim for breach of fiduciary duty
> because there was no fiduciary duty on the part of the Defendant under [11
> U.S.C.] §523(a)(4). This is odd. The court had already noted that the trust
> funds had been disbursed to Mayhew and the Defendant individually, and
> not to MII. The court agreed that Defendant was therefore a fiduciary under
> the TFS. But somehow, under the trial court's reasoning, the Defendant was
> *not* a fiduciary under §523(a)(4).
>
> The Plaintiff asks that this Court accept the trial court's denomination of the
> Defendant as a fiduciary under the [Colo. Rev. Stat. § 38-22-127], but reject
> the trial court's further finding that the Defendant was not a fiduciary under
> [11 U.S.C.] §523(a)(4).

Docket No. 13 at 15. The Court does not construe this argument as a challenge to the

Bankruptcy Court's decision not to retroactively impose a fiduciary duty on Dr. Mayhew

because of the state court case judgment. Rather, the Court agrees with Dr. Mayhew's

interpretation of Consolidated's argument as asserting that, because Dr. Mayhew was a

fiduciary pursuant to Colo. Rev. Stat. § 38-22-127(1), Dr. Mayhew should have been

considered a fiduciary under 11 U.S.C. § 523(a)(4) for all purposes. Docket No. 21 at

24. Dr. Mayhew contends that Consolidated failed to raise this argument before the

Bankruptcy Court and, as a result, that this argument should be rejected.  *Id.*[6]

Consolidated does not address these contentions or reiterate its argument in its reply

brief.  As a result, the Court deems Consolidated's argument on this issue abandoned.

For the foregoing reasons, Consolidated fails to identify any reversible error in

the Bankruptcy Court's determination that Dr. Mayhew was entitled to safe harbor

protection under § 38-22-127(2).

## B.  Defalcation

Because the Court affirms the Bankruptcy Court's conclusion that, pursuant to

the Colo. Rev. Stat. 38-22-127(2) safe harbor provision, Dr. Mayhew was not acting in a

fiduciary capacity with respect to funds owed to Consolidated, Consolidated's 11 U.S.C.

§ 523(a)(4) claim for defalcation necessarily fails.  *See In re Young*, 91 F.3d 1367, 1371

(10th Cir. 1996) ("under § 523(a)(4), Fowler Brothers had to establish the following two

elements to prevent the discharge of Mr. Young's debt: a fiduciary relationship between

Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the

course of that fiduciary relationship"); *cf. In re Bratt*, 489 B.R. 414, 430-31 (Bankr. D.

Kan. 2013) (dismissing § 523(a)(4) claim upon finding absence of fiduciary duty without

---

[6]Even if the Court were to consider such an argument, it is premised on a
misunderstanding of the applicable law and without merit.  Consolidated relied
exclusively on Colo. Rev. Stat. § 38-22-127 to create the requisite trust res and
fiduciary relationship on its 11 U.S.C. § 523(a)(4) claim for defalcation.  *See In re
Young*, 91 F.3d 1367, 1371-72 (10th Cir. 1996) ("an express or technical trust must be
present for a fiduciary relationship to exist under § 523(a)(4) . . . a general fiduciary duty
of confidence, trust, loyalty, and good faith . . . is [in]sufficient to establish a fiduciary
relationship for purposes of dischargeability").  If, because of safe harbor protection, Dr.
Mayhew was not in a fiduciary position with respect to Consolidated under Colo. Rev.
Stat. § 38-22-127, then no other basis existed upon which to conclude Dr. Mayhew was
in a fiduciary position with respect to Consolidated, as is required by an 11 U.S.C. §
523(a)(4) claim for defalcation.

considering defalcation element).  Consolidated's amended complaint alleged only that Dr. Mayhew had a fiduciary duty to it based upon Colo. Rev. Stat. § 38-22-127.  R. at 21.  Consolidated provides no other independent basis for concluding that Dr. Mayhew acted in the requisite fiduciary capacity with respect to Consolidated.  *See In re Young*, 91 F.3d at 1371.  As a result, the Court declines to reach the question of whether Dr. Mayhew committed a defalcation as that term is defined in *Bullock v. BankChampaign, N.A.*, --- U.S. ----, 133 S. Ct. 1754, 1759-60 (2013).[7]

### C.  Civil Conspiracy Claim

In its second amended complaint, Consolidated brought a claim (the third claim for relief) against Dr. Mayhew for civil conspiracy.  R. at 21-22.  Consolidated argues that the Bankruptcy Court erred by failing to address Consolidated's claim for civil conspiracy in its findings of fact and conclusions of law.  Docket No. 13 at 22.

Consolidated is correct that the Bankruptcy Court's decision did not mention Consolidated's civil conspiracy claim.  Pursuant to Fed. R. Bankr. P. 7052, Fed. R. Civ. P. 52 applies in adversary proceedings such as this.  A bankruptcy court's failure to make findings of fact specific to a party's causes of action generally dictates that the

---

[7]The Supreme Court held that defalcation ordinarily requires an intentional wrong such that the fiduciary must know that her conduct is improper or consciously disregard a substantial and unjustifiable risk that her conduct will turn out to violate a fiduciary duty. *Bullock*, 133 S.Ct. 1760.  Because issues of intent are questions of fact, *In re Walker*, 391 B.R. 211, at *1 (B.A.P. 10th Cir. 2008) (unpublished), the Bankruptcy Court's findings on this question are upheld unless such findings are "completely devoid of minimum evidentiary support [or] bear[] no rational relationship to the supportive evidentiary data." *In re Ford*, 492 F.3d 1148, 1154 (10th Cir. 2007).  Although the Court does not reach the question of whether Dr. Mayhew committed a defalcation, Consolidated's arguments on appeal appear to fall well short of identifying sufficient evidence upon which to overturn the Bankruptcy Court's finding.

case be remanded for further findings.  *See In re Fordu*, 201 F.3d 693, 710 (6th Cir.

1999) (remanding case where bankruptcy court failed to make specific findings as to

Trustee's third and fourth causes of action in adversary proceeding).  However, "a

failure to make findings is not prejudicial where . . . the party raising objections is not

entitled to prevail."  *Matter of Holtkamp*, 669 F.2d 505, 510 (7th Cir. 1982).  The Court

concludes that this is just such a case.

 Although Consolidated pled a claim for civil conspiracy, it did not explicitly

mention this claim in defending Dr. Mayhew's motion for summary judgment, which

sought summary judgment as to civil conspiracy.  *See generally* Docket No. 22-1 at 12-

22.  Although the Bankruptcy Court ruled that all of Consolidated's claims survived

summary judgment, *Id.* at 25-26, there is no indication that Consolidated pursued its

civil conspiracy claim beyond the pleading stage.  Consolidated's trial brief does not

mention a claim for civil conspiracy and instead states, "In this Adversary Proceeding,

Consolidated seeks a determination that the debt arising out of Defendant's violations

of the Colorado Mechanics' Lien Trust Fund Statute and Civil Theft Statute is not

dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4)."  R. at 49-50.  At trial,

Consolidated's counsel did not specifically ask Mr. Stewart if he was seeking relief

under a claim for civil conspiracy, nor did Mr. Stewart volunteer such information.  R. at

374.  Consolidated's closing argument did not mention a claim for civil conspiracy;

rather, it stated that "Consolidated seeks a determination that the debt arising out of

Defendant's violation of the Colorado Mechanics' Lien Trust Fund Statute and Civil

Theft Statute is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4) for

acts that constitute 'fraud or defalcation while acting in a fiduciary capacity,

13

embezzlement, or larceny.'"  R. at 58.  Consolidated's closing argument argued only

that Dr. Mayhew's debts are non-dischargeable under § 523(a)(4), R. at 67, and

Consolidated did not otherwise request that the Bankruptcy Court award it relief on any

alternative grounds.  *See* R. at 73.  Consolidated's rebuttal closing argument is likewise

silent as to any civil conspiracy claim.  *See* R. at 599-08.[8]

Because arguments raised for the first time on appeal are generally deemed

waived, *Braswell v. Cincinnati, Inc.*, 731 F.3d 1081, 1092 (10th Cir. 2013), the question

becomes whether Consolidated properly raised any arguments related to its civil

conspiracy claim before the Bankruptcy Court and thereby preserved such arguments

for appeal.  "[V]ague, arguable references to [a] point in the [lower] court proceedings

do not . . . preserve the issue on appeal."  *Tele-Communications, Inc. v. C.I.R.*, 104

F.3d 1229, 1233 (10th Cir. 1997) (quotations omitted).  Similarly, "where an issue is

raised but not pursued in the trial court, it cannot be the basis for the appeal."  *Id.*  Here,

the mere fact that Consolidated pled a claim for civil conspiracy is not, by itself,

sufficient to preserve that claim for appeal.  Consolidated's briefs do not identify

anything in the record upon which to conclude that it pursued its civil conspiracy claim

at trial and, after review, no such evidence is apparent to Court.  *See Hunt v. City of Los

Angeles*, 523 F. App'x 493, 495 (9th Cir. 2013) (unpublished) ("Hunt's failure to present

this claim at trial constitutes an abandonment of this claim."); *see also Maynard v. City

of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (holding that plaintiff waived claims by

---

[8]The Court notes that Consolidated additionally pled state law claims for civil
theft, breach of contract, and breach of fiduciary duty, but, with the exception of its civil
theft claim, does not appear to have raised such claims at trial and does not discuss
them on appeal.  *See* R. at 21-22.

failing to object to claims' exclusion from jury instructions); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996) ("even though a party's complaint contains certain claims, he will waive those claims if he fails to object to their exclusion from the jury instructions"). The Court therefore finds that Consolidated failed to preserve its civil conspiracy claim for appellate review. *Cf. C.I.R.*, 104 F.3d at 1233 ("If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review." (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991))).

To the extent Consolidated argues that the Bankruptcy Court committed reversible error in failing to make findings specific to its civil conspiracy claim, the Court disagrees. Because Consolidated has not properly raised any arguments upon which the Court could conclude that Consolidated was entitled to prevail on its civil conspiracy claim, Consolidated cannot establish on appeal that it was prejudiced by the Bankruptcy Court's failure to make specific findings on such a claim. *See Matter of Holtkamp*, 669 F.2d at 510. For the foregoing reasons, Consolidated has failed to establish reversible error with respect to the Bankruptcy Court's dismissal of Consolidated's civil conspiracy claim.

### D.  Larceny

Consolidated argues that the Bankruptcy Court erred in not finding that Dr. Mayhew committed larceny as that term is used in 11 U.S.C. § 523(a)(4). Docket No. 13 at 25. Consolidated primarily asserts that, because Dr. Mayhew committed civil theft as defined by the Colorado criminal theft statute, Colo. Rev. Stat. § 18-4-408, Dr.

Mayhew committed larceny as that term is used in 11 U.S.C. § 523(a)(4). *Id.* at 25-26.

Dr. Mayhew responds that Consolidated did not raise the issue of larceny under 11

U.S.C. § 523(a)(4) before the Bankruptcy Court, but instead argued exclusively that Dr.

Mayhew committed defalcation while acting in a fiduciary capacity. Docket No. 21 at

33. In its reply brief, Consolidated argues that pleading a state-law claim for civil theft

was akin to asserting that Dr. Mayhew committed larceny under § 523(a)(4). Docket

No. 25 at 15.

The Court first turns to the question of whether Consolidated has preserved for

appeal its argument that Dr. Mayhew committed larceny under § 523(a)(4). Larceny

under § 523(a)(4) requires that a debtor act with an intent to steal. *In re Ghaemi*, 492

B.R. 321, 325 (Bankr. D. Colo. 2013). Consolidated does not appear to have squarely

raised the issue of whether Dr. Mayhew acted with the intent to steal before the

Bankruptcy Court. *Cf.* R. at 69-70 (discussing intent for defalcation under *Bullock*).

Consolidated's briefs do not identify anything in the record upon which to conclude that

it pursued a larceny theory in support of its § 523(a)(4) claim before the Bankruptcy

Court. Although Consolidated's written submission to the Bankruptcy Court mentioned

the term "larceny" in restating the text of § 523(a)(4), *see* R. at 58, 614, such cursory

and isolated mentions of the term "larceny" are insufficient to preserve Consolidated's

arguments. *Cf. C.I.R.*, 104 F.3d at 1233-34 (holding that three sentences of argument

in a single brief were insufficient to preserve an issue for appeal). Because

Consolidated did not argue before the Bankruptcy Court that Dr. Mayhew's debt to

Consolidated should not be discharged because Dr. Mayhew committed larceny under

§ 523(a)(4), it cannot so argue on appeal.[9]

To the extent Consolidated argues that, by bringing a claim for civil theft, it preserved its right to argue on appeal that Dr. Mayhew committed larceny under § 523(a)(4), the Court disagrees.  Assuming that Consolidated sufficiently raised its civil theft claim before the Bankruptcy Court, "[p]leadings and motions in the trial court will be given a liberal reading, but we have consistently turned down the argument that *the raising of a related theory* was sufficient" to preserve an issue for appellate review. *C.I.R.*, 104 F.3d at 1233 (quotations omitted); *see also Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 89-90 (10th Cir. 1987) (declining to consider "additional negligence theory" that was not raised before the trial court).  Thus, the Court is not convinced that, merely by raising a state-law claim for civil theft, Consolidated preserved its right to argue on appeal that Dr. Mayhew committed larceny under § 523(a)(4).  Consolidated therefore fails to establish that the Bankruptcy Court's decision erred in this respect.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Bankruptcy Court's decision is **AFFIRMED** and this matter is closed.

---

[9]Moreover, it is not entirely clear that Consolidated adequately pled larceny under § 523(a)(4).  Consolidated's amended complaint states only that Dr. Mayhew "breached her fiduciary duty to the Plaintiff . . . by failing to administer the loan proceeds and construction funds as required by C.R.S. §38-22-127."  R. at 21; *cf. In re Bratt*, 489 B.R. at 430 ("The Receiver did not allege either embezzlement or larceny in the final pretrial order; he only asserted a claim based upon fiduciary fraud or defalcation. Indeed no reference at all was made to embezzlement or larceny.  Nor does the record suggest that an embezzlement or larceny claim was tried by the implied consent of the parties." (footnote omitted)).

DATED March 31, 2015.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge